**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CITY OF LAUREL, MISSISSIPPI, obo itself and all other similarly situated, | No.　22-15476 |
| Plaintiff-Appellee, | D.C. No. 3:21-cv-00124-LRH-CLB |
| v. | |
| CINTAS CORPORATION NO. 2, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted February 14, 2023
San Francisco, California

Before:　MILLER, SANCHEZ, and MENDOZA, Circuit Judges.
Dissent by Judge MILLER.

　　　Cintas Corporation No. 2 ("Cintas") appeals the district court's order denying Cintas's motion to stay proceedings and compel arbitration of the City of Laurel's (the "City") breach of contract claims.　We have jurisdiction under 9 U.S.C. § 16(a)(1)(A) and, reviewing de novo, we affirm.

---

　　　*　　This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

The parties are familiar with the facts of this case, so we need not recite them here other than to state that there are two contracts at issue. The first contract, which incorporates an arbitration agreement, is the Master Agreement between Cintas and the lead public agency. The second contract, the "piggyback" agreement, is between Cintas and the City. Both contracts contain nearly identical provisions delineating how Cintas will deal with participating public agencies such as the City (collectively the "PPA Provisions"). Neither party disputes that a valid arbitration agreement exists between Cintas and the lead public agency, only whether the same agreement exists between Cintas and the City.

Under the Federal Arbitration Act, the court is limited to "determining (1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[A]rbitration is a matter of contract," *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564 (9th Cir. 2014) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)), and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). To determine whether an agreement to arbitrate exists, we apply state contract law. *Knutson*, 771 F.3d at 565. Applying

2

Mississippi contract law,[1] we conclude there is no valid arbitration agreement between Cintas and the City.

I.

First, we agree with the district court that the dispute resolution terms in the PPA Provisions displace the arbitration agreement incorporated into the Master Agreement. The PPA Provisions indicate an intent to allow Cintas and participating public agencies to negotiate certain terms, such as inspection and delivery. As to dispute resolution, the PPA Provisions do not mention arbitration and instead state that Cintas and the City must resolve disputes "directly between them in accordance with and governed by the laws of the State in which [the City] exists." If this language meant nothing more than arbitration, it would be superfluous in light of the arbitration agreement incorporated into the Master Agreement. *See Jones v. Miss. Insts. of Higher Learning*, 264 So. 3d 9, 22 (Miss. Ct. App. 2018) (recognizing courts must avoid interpreting a contract in a way that would render provisions "redundant and superfluous"). Had Cintas and the City wished to submit their disputes to arbitration, they could have included language to this effect in the piggyback agreement that directly governs their relations. Instead, as the district court concluded, arbitration terms are notably absent from

---

[1] Cintas argues that Maryland law governs the interpretation of the Master Agreement, but both parties agree that the two states provide the same interpretive rules for purposes here.

3

this agreement.  *Cf. Chisom v. Roemer*, 501 U.S. 380, 396 n.23 (1991) ("[S]ilence in this regard can be likened to the dog that did not bark.").

## II.

Second, we cannot accept Cintas's position that we must harmonize the contract language by applying the arbitration agreement to the City's dispute with Cintas.  The arbitration agreement lies within a disputes provision containing terms that clearly apply only to Cintas and the lead public agency.  Given this structure, we decline to excise the arbitration agreement and apply it to the instant dispute. *See Epperson v. SOUTHBank*, 93 So. 3d 10, 17 (Miss. 2012) ("[T]he courts do not have the authority to modify, add to, or subtract from the terms of a contract . . . ." (quoting *Wallace v. United Miss. Bank*, 726 So. 2d 578, 584 (Miss. 1998))); *cf. Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) ("[A] court may not devise novel rules to favor arbitration over litigation.").

**AFFIRMED.**

4



*City of Laurel, Mississippi v. Cintas Corporation No. 2*, No. 22-15476

MILLER, Circuit Judge, dissenting:

The parties' agreement makes this dispute subject to arbitration. I would therefore reverse the judgment of the district court and remand with instructions to grant the motion to compel arbitration.

In interpreting a contract, we must "read the contract as a *whole,* so as to give effect to all of its clauses." *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 111 (Miss. 2005). Here, the contract consists of three separate documents. First, there is the 2017 Facilities Solutions Agreement (FSA) between the City and Cintas, which the court refers to as the "piggyback" agreement. Second, there is the 2012 Master Agreement. Although the City was not a party to the Master Agreement, the FSA expressly incorporates it, in a section the court refers to as the "PPA Provisions," by stating that Cintas "agrees to extend the same terms, covenants agreed to under the Master Agreement with Lead Public Agency Harford County Public Schools to other government agencies . . . that, in their discretion, desire to access the Master Agreement." Third, the Master Agreement in turn incorporates parts of a request for proposals (RFP) that was previously issued by Harford County Public Schools. Specifically, it incorporates the RFP's dispute-resolution provision by stating that "[d]isputes will be settled as per the stipulations contained within" that document.

1

The City emphasizes that the FSA contains its own dispute-resolution provision: "Any disputes between a Participating Public Agency and Supplier will be resolved directly between them in accordance with and governed by the laws of the State in which the Participating Public Agency exists." Based on that provision, the City invites us to ignore the dispute-resolution provision of the RFP. But we may not ignore any part of the contract. Rather, our obligation is to harmonize the contract by giving effect to every part of it. And we can easily harmonize all of the terms at issue.

The RFP's dispute-resolution provision contains three parts. First, it says that "[e]xcept as otherwise provided in these contractual documents," disputes "shall be referred to the Harford County Public Schools Supervisor of Purchasing." As the parties agree, that makes no sense as applied to an agreement with the City, which has no relationship to Harford County Public Schools. Not surprisingly, the FSA's dispute-resolution provision expressly displaces it by specifying that disputes "will be resolved directly between" the parties.

Second, the RFP says that the contract shall be governed by Maryland law. It would be strange to apply Maryland law to an agreement between two parties neither of which has any connection to Maryland. And here too, the FSA expressly displaces the provision by stating that it is "governed by the laws of the State in which the Participating Public Agency exists," in this case, Mississippi.

2

Third, and crucially, the RFP provides for arbitration, stating that "[a]ll disputes shall be decided by a single arbitrator" under the rules of the American Arbitration Association. Unlike the other two parts of the RFP's dispute-resolution provision, there is nothing surprising about the City and Cintas deciding to resolve disputes by arbitration. Nor is anything in the FSA inconsistent with their agreeing to do so. In particular, the FSA's statement that disputes "will be resolved directly between them" is entirely consistent with resolving disputes through arbitration. Had the parties wished to displace the RFP's arbitration clause, they could easily have written the FSA to say "resolved directly between them *in any court having jurisdiction*," but they did not. Because nothing in the FSA displaces the arbitration clause that the parties agreed to incorporate, I would enforce it according to its terms.